IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MONK, | ) | |
| | ) | CASE NO. 3:18CV2941 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DAVID GRAY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Daniel Monk ("Petitioner" or "Monk") filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Monk is detained at the Belmont Correctional Institution, having pleaded guilty in the Allen County, Ohio, Court of Common Pleas to two count of gross sexual imposition, three counts of rape, and one count of attempted rape. *State v. Monk*, Case No. CR2015-0118 (Allen Cnty. Common Pleas Ct. filed August 11, 2015). The trial court sentenced Monk to five years in prison on each gross sexual imposition count, ten years in prison on each rape count, and eight years in prison for attempted rape, to be served consecutively, for an aggregate sentence of 48 years. Doc. 5-1, pp. 18-19.[1]

On November 20, 2018, Monk filed his Petition for Writ of Habeas Corpus setting forth three grounds for relief. Doc. 1. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Monk's Petition is barred by the statute of limitations. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

## I. Procedural History

### A. State Trial Court

---

[1] Doc. page citations are to ECF Doc. page numbers.

In May 2015, Monk was indicted by an Allen County Court of Common Pleas grand jury for two counts of gross sexual imposition, R.C. 2907.05(A)(4)/2907.05(C)(2) (Counts 1 and 16); eight counts of rape, R.C. 2907.02(A)(1)(b)/2907.02(B) (Counts 2, 4, 6, 8, 10, 12, 14, and 17); eight counts of rape, R.C. 2907.02(A)(1)(c)/2907.02(B) (Counts 3, 5, 7, 9, 11, 13, 15 and 18); one count of attempted rape, R.C. 2923.02/2907.02(A)(1)(b), 2907.02(B) (Count 19); and one count of attempted rape, R.C. §2923.02/2907.02(A)(1)(c), 2907.02(B) (Count 20).  Doc. 5-1, pp. 3-9.  Monk, through counsel, pleaded not guilty to all the charges in the indictment.  Doc. 5-1, p. 10.

Following plea negotiations, Monk withdrew his former plea of not guilty and entered a plea of guilty to the following reduced charges: two counts of gross sexual imposition (Counts 1 and 16), three counts of rape (Counts 3, 7 and 18), and one count of attempted rape (Count 20). Doc. 5-1, pp. 11-15.

On September 21, 2015, the trial court sentenced Monk to five years in prison on each gross sexual imposition count, ten years in prison on each rape count, and eight years in prison for attempted rape, to be served consecutively, for an aggregate sentence of 48 years; it also found him to be a Tier III sex offender/child victim offender.  Doc. 5-1, pp. 18-19.

**B. Direct Appeal**

On September 28, 2015, Monk, through counsel, filed a notice of appeal with the Ohio Court of Appeals, Third District.  Doc. 5-1, p. 23.  Monk's appointed counsel requested permission to withdraw from the case, filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that he could not find any meritorious issues for appeal.  Doc. 5-1, pp. 34-35.  He offered the following potential assignments of error:

> 1. The trial court's sentence and imposition of consecutive sentences were contrary to law and constituted an abuse of discretion.

2

2. The defendant's plea and admission were not entered in a knowing, intelligent
and voluntary manner.

Doc. 5-1, p. 37.  In a letter filed December 3, 2015, the Ohio Court of Appeals notified Monk

that his attorney had filed an *Anders* brief, provided a copy of the brief, and informed Monk that

he had until January 4, 2016, to file "any points that you choose respecting the matters which

[your attorney] sets forth, or respecting any matter which you wish to raise in your appeal."  Doc.

5-1, p. 54.  Monk did not respond.

On March 1, 2016, the Ohio Court of Appeals noted it had reviewed the *Anders* brief and

the full record and agreed with Monk's counsel that there was no arguable nonfrivolous issue for

appeal.  Doc. 5-1, pp. 55-58.

Monk did not timely appeal this decision to the Ohio Supreme Court.[2]

### C. Motion for Leave to File Notice of Delayed Appeal

On April 25, 2016, Monk, pro se, filed a motion for leave to file notice of delayed appeal

in the Ohio Court of Appeals.  Doc. 5-1, p. 59.  In his motion, Monk states that he was unable to

file a timely appeal because he was transferred to different institutions twice after initial intake,

lacked legal assistance or legal library access at one of the institutions, and was a patient in the

prison medical center for approximately three weeks.  Doc. 5-1, pp. 59-61.  On May 4, 2016, the

appellate court denied Monk's motion for leave to file delayed appeal, explaining that, because a

timely appeal had been filed and was dismissed on its merits, a delayed appeal pursuant to App.

R. 5 was not an available remedy to Monk.  Doc. 5-1, pp. 62-63.

### D. Second Motion for Leave to File Notice of Delayed Appeal

Nearly two years later, on April 16, 2018, Monk, pro se, filed a second motion for leave

---

[2] In his Petition, Monk states that he filed appeals to the Ohio Supreme Court in September and October of 2018, but
that the Court declined to file the appeal.  E.g., Doc. 1, p. 7.  He provides an October 15, 2018, correspondence to
him from the Ohio Supreme Court in which the Court notifies him that any appeal of his felony conviction was
untimely and could not be filed.  Doc. 1-2, p. 1.  The Court informed Monk of the requirements for perfecting a
delayed appeal pursuant to Court rules and also provided him with a "Guide to Filing" and the Court's Rules of
Practice.  There is no indication that Monk complied with these requirements.

to file notice of delayed appeal in the Ohio Court of Appeals.  Doc. 5-1, p. 64.  He alleged he

was prevented from obtaining "discovery" until March of 2018.  Doc. 5-1, p. 65.  On April 18,

2018, the Court of Appeals overruled Monk's motion, again noting that he had previously filed a

timely appeal that was dismissed on the merits and that App. R. 5 was not an available remedy.

Doc. 5-1, pp. 66-67.

### E. Delayed Petition for Post-Conviction Relief

On May 14, 2018, Monk, pro se, filed a post-conviction motion to vacate his guilty plea

and order trial on the original charges.  Doc. 5-1, p. 68.  He alleged that it took him nearly four

years to get access to the documents he needed; he also stated that he has diminished intellectual

capacity and did not understand the crimes he was charged with, the procedures that were used to

convict him, or his sentence.  Doc. 5-1, p. 69.

On May 29, 2018, the trial court denied Monk's motion because he did not demonstrate

that his plea was unknowing or involuntary and he failed to show that he was subject to a

manifest injustice by letting his plea stand.  Doc. 5-1, pp. 75-80.  The trial court also found that

Monk had never raised the issue of his competency during the criminal proceedings and that the

record failed to substantiate his assertion that he misunderstood his criminal proceedings.  Doc.

5-1, pp. 76-80.  Monk did not appeal this ruling to the Ohio Court of Appeals.

On July 9, 2018 (after the time to appeal had expired), Monk filed a post-conviction

petition in the Ohio Court of Appeals, asserting the same arguments he raised in his prior

petition.  Doc. 5-1, pp. 81-88.  On July 13, 2018, the Ohio Court of Appeals dismissed his post-

conviction petition for lack of jurisdiction.  Doc. 5-1, pp. 89-90.

### F. Second Delayed Petition for Post-Conviction Relief

On August 6, 2018, Monk, pro se, filed a second post-conviction petition in the trial court

wherein he again claimed that, because of his diminished capacity, he did not understand the

4

charges against him or the procedures by which he was convicted.  Doc. 5-1, pp. 91-92.  On

August 22, 2018, the trial court denied his petition as untimely and pursuant to the doctrine of res

judicata.  Doc. 5-1, pp. 104-109.  Monk did not appeal.[3]

### G. Federal Habeas Petition

On November 20, 2018, Monk, pro se, filed a federal habeas petition, raising the

following three grounds for relief:

> **Ground One:** Defendant was denied his Constitutional rights of due process because of
> his limited mental ability, diminished capacity and temporary insanity. The initial
> interview violated the Equal Protection Clause of the Fourteenth Amendment.
>
> **Ground Two:** The petitioner's Sixth Amendment to the United States Constitution
> (along with analogous State constitutional guarantees) rights were violated when the
> appellant was deprived of the effective assistance of counsel contrary to the State and
> Federal Constitutions.
>
> **Ground Three:** Fundamental rights, cruel & unusual punishment. The treatment a
> prisoner receives in prison and the conditions under which he is confined are subject to
> scrutiny under the Eighth Amendment. In its prohibition of cruel and unusual
> punishments, the Eighth Amendment places restraints on prison officials, who may not,
> for example, use excessive physical force against prisoners. The Amendment also
> imposes duties on these officials, who must provide humane conditions of confinement;
> prison officials must ensure that inmates receive adequate food, clothing, shelter, and
> medical care, and must take reasonable measures to guarantee the safety of the inmates.

Doc. 1, pp. 2-4.  Respondent filed a Motion to Dismiss, arguing that Monk's Petition is barred by

the statute of limitations, Doc. 5, and Monk filed a response.  Doc. 7.

## II. Law and Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Monk's Petition is barred by the one-year statute of limitations

set forth in 28 U.S.C. § 2244(d)(1).  The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the

---

[3] See note 2, *supra*.

judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation shall run from the latest of—
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)).  This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery."  *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)).  A post-

conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id*. at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts reject it as untimely pursuant to state law).

### B. Monk's Petition is time-barred

#### 1. § 2244(d)(1)(A)

The one-year statute of limitations began to run when Monk's case became final.  28 U.S.C. § 2244(d)(1)(A).  Monk's case became final on April 15, 2016, based on the following calculation.  The Ohio Court of Appeals denied his direct appeal on March 1, 2016, and he had 45 days to file an appeal to the Ohio Supreme Court, which he did not do.  Thus, his case became final when the 45-day time period expired, on April 15, 2016, and the one-year limitations period began to run the next day, April 16, 2016.  *See Keeling v. Warden, Lebanon Corr. Inst*., 673 F.3d 452, 459-460 (a case becomes final under 20 U.S.C. § 2244(d)(1)(A) when the time for seeking direct review expires, citing *Gonzalez v. Thaler*, 565 U.S. 134, 149-151 (2012)).

On April 25, 2016, Monk filed a motion for leave to file a delayed appeal in the Ohio Court of Appeals.  If properly filed, this motion would toll the limitations period during its pendency.  Respondent submits that Monk's motion for leave to file delayed appeal was not properly filed and, therefore, cannot toll the limitations period.  Doc. 5, p. 9.  Respondent admits, however, that it is merely "arguable" that Monk's filing was not properly filed and cites no legal authority for its position.  The undersigned assumes, without deciding, that Monk's motion for delayed appeal was properly filed and did toll the limitations period.  However, his motion was pending for only nine days, until the Ohio Court of Appeals rejected it on May 4, 2016.  Restarting the clock on May 5, the one-year limitations period ran uninterrupted until it expired on April 26, 2017.

The next filing Monk made in state court was nearly a year later, on April 16, 2018.  This April 2018 filing does not toll the limitation period because it occurred after the limitations period had already expired.  *See Vroman*, 346 F.3d at 602 (upon the expiration of the limitations period, a state collateral petition will not toll the statute of limitations per § 2244(d)(2)).

Because Monk filed his Petition more than a year and a half after the statute of limitations expired, his Petition is time-barred.

### 2. § 2244(d)(1)(B)

Monk argues that his Petition is timely based on § 2244(d)(1)(B), which provides that the limitations period begins to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]"  Doc. 7, p. 7.  He contends that the state refused his attempts to gain access to his "Discovery and Transcripts until 2018," at which time he was able to file his second motion for leave to file delayed appeal and his two delayed petitions for post-conviction relief.  Doc. 7, p. 7.

Monk's argument that the statutory period should begin to run when he received his "discovery" and transcripts fails.  First, the record shows that Monk didn't even request his transcripts until March 6, 2017, almost a year after his case became final.  Doc. 5-1, p. 115.  He does not explain why he did not request his transcripts sooner; in other words, it is Monk, not the state, that caused this delay.  Second, Monk does not show how the state court's alleged actions prevented him from filing his federal habeas petition.  *See Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 751 (6th Cir. 2011) ("[A]ccess to the trial transcript—although understandably helpful to petitioners—is not necessary to file a habeas petition.").  Finally, he does not identify how the state court's actions were unconstitutional or unlawful.

Monk's assertion that his Petition was timely under § 2244(d)(1)(B) fails.

### C. Monk provides no basis for equitable tolling

A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418).  The petitioner bears the burden of establishing entitlement.  *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).  A petitioner may also be entitled to equitable tolling "if he demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice."  *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495-496 (1986)).  "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  "The evidence must demonstrate factual innocence, not mere legal insufficiency."  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329).  The timing of an actual innocence claim "seriously undermine[s] the credibility" of such a claim.  *Id.* at 1936.

Monk's alleged lack of "discovery" and transcripts does not entitle him to equitable tolling.  *Hall*, 662 F.3d at 750-751 ("Standing alone, however, the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling." (citing cases)).  Furthermore, he does not rely on this material to support his grounds in his petition.  Rather, he alleges that he was mentally incompetent to stand trial and participate in his defense.  Doc. 1, pp. 2-3.  *See id.* ("Even without the transcript, Hall clearly knew what took place at his

trial and what his grounds for relief were.").  Although Monk references a "video" of his initial interview that shows he was incompetent (Doc. 1, p. 2), Monk did not file the video and he was not required to file the video.  He is not entitled to equitable tolling based on his purported lack of discovery and transcripts.

In his Petition and response, Monk argues that he is entitled to equitable tolling because his mental impairment caused an external impediment to his timely filing.  The Sixth Circuit has held that "a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year state of limitations."  *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011).  However, to be entitled to equitable tolling on the basis of mental incompetence, Monk must demonstrate: "(1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with the statute of limitations."  *Id*.  "[A] blanket assertion of mental incompetence is insufficient to toll the statute of limitations."  *Id*.

Monk does not demonstrate either of the two prongs described in *Ata*.  He merely states, in conclusory fashion, that he has "cognitive deficits, mental impairments, disability, diminished capacity, limited intellectual functioning, [and] inability to read[.]"  Doc. 7, p. 5.  These blanket assertions of mental incompetence are insufficient toll the statute of limitations.  *C.f. Ata*, 662 F.3d at 743 (petitioner's past medical treatment for mental illness and his allegations that he was hospitalized for paranoid schizophrenia and medicated by the department of corrections for his schizophrenia and other psychoses during the one-year statute of limitations period, which prevented him from timely filing his petition, were sufficient to warrant an evidentiary hearing).  Moreover, Monk primarily cites his reliance upon a prison law clerk and his lack of transcripts to explain his delay in filing, not his alleged mental incompetence.  See, generally, Doc. 7, p. 4.  Allegations of lack of legal assistance or library access are not sufficient to warrant equitable

10

tolling.  *See Hall*, 662 F.3d at 750-751 (pro se status and limited library access are not grounds for equitable tolling).

Moreover, Monk's allegations regarding his lack of access to his transcripts and legal assistance are directed at his explanation for why he failed to file a timely brief on direct appeal; they do not provide an explanation for why he failed to file a timely habeas petition.  The record shows that Monk filed a motion for leave to file a delayed appeal in April 2016, ten days after he says he received notice that the Ohio Court of Appeals affirmed his conviction and shortly after the limitations period began to run.  Doc. 7, p. 4.  Despite this ability to litigate his case, Monk did not file his Petition until November 2018.  Monk's claim that he was transferred to different prisons, preventing him from timely filing his motion for delayed appeal (Doc. 7, p. 4), also fails.  First, it only explains why he was late filing his delayed appeal, not his habeas petition.  Second, he was transferred twice until arriving at Belmont Correctional Institution, where he was housed when the limitations period began to run, in April 2016, and where he is still housed.  His two transfers to prisons did not occur during the limitations period and did not prevent him from filing his Petition.

In short, Monk has not shown he is entitled to equitable tolling.

### III. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Respondent's Motion to Dismiss (Doc. 5) be **GRANTED** and Monk's habeas Petition be **DISMISSED** as time-barred.

Dated: August 5, 2019

*/s/ Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge

### <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).